UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTHONY S. WILLIAMS, et al.,

    Plaintiffs,

v.                                                    CASE NO.: 8:11-cv-1840-T-23TGW

KATHLEEN BENWAY, et al.,

    Defendants.
_____/

**ORDER**

    The United States certified that Kathleen Benway acted within the scope of her federal government employment when her car allegedly swerved at Anthony Williams's motorcycle and caused Williams to crash. Anthony and Elizabeth Williams failed to challenge the certification, and an order (Doc. 21) substituted the United States into the action for Benway. The Williamses move (Docs. 23, 24) for reconsideration.

    Benway works in Washington, D.C., as an attorney for the Federal Trade Commission. In May, 2007, the FTC paid for Benway to travel to Florida to conduct an investigation in Orlando on a Thursday and a Friday and to interview a witness in Tampa on the following Monday. The FTC paid also for Benway's expenses, including the rental of a car. After completing her work in Orlando,

Benway began driving to her mother's residence in Bradenton, where Benway planned to stay until her Monday business in Tampa. The FTC approved Benway's choice for lodging. The accident with Williams occurred during Benway's drive to her mother's house.

Under the Federal Tort Claims Act (FTCA), the United States waives sovereign immunity and assumes liability for a tort that a federal government employee commits while acting within the scope of employment, as determined under the law of the state where the tort occurred. Because Benway traveled to Florida to benefit the FTC, the United States argues that Benway's entire trip, including the drive to where she planned to stay, occurred within the scope of employment. The Williamses insist that a traveling employee acts within the scope of employment for purposes of workers' compensation but acts outside the scope of employment for purposes of vicarious liability. Alternatively, claiming that Elizabeth Williams smelled alcohol on Benway's breath after the accident, the Williamses propose that Benway deviated from her employment.

The liability of an employer for an injury caused by a traveling employee driving a vehicle at the employer's instruction began with horse-drawn carriages and applied immediately to automobiles. *Philadelphia & Reading R. Co. v. Derby*, 55 U.S. 468, 485-87 (1852); *Brooks v. Cent. Sainte Jeanne*, 228 U.S. 688, 693 (1913) (Holmes, J.). Also long ago, an exception from liability arose for an employer whose employee

distinctly abandons the employer's purpose during a journey.  In *Joel v. Morrison*, 6 C.&P. 501, 172 Eng.Rep. 1338 (1834), an employee drove a cart and horse into a pedestrian.  The employer attested that the accident occurred away from the employee's proper route, and the pedestrian suggested that the employee went to see a friend.  The court of exchequer explained:

> The master is only liable where the servant is acting in the course of his employment.  If he was going out of his way, against his master's implied commands, when driving on his master's business, he will make his master liable; but if he was going on a frolic of his own, without being at all on his master's business, the master will not be liable.

172 Eng.Rep. 1338; *see also Derby*, 55 U.S. at 486-87.

Shortly after mass use of the automobile commenced, Florida adopted essentially the rule in *Joel*.  *Anderson v. Southern Cotton Oil Co.*, 73 Fla. 431 (1917), notes that:

> where without the employer's knowledge or consent there is a deviation in the use of an automobile from the direct line of the employer's business solely for the purposes of the employé . . , and an injury was inflicted by negligent driving while the employé was returning to the sphere of the employer's business, the question as to whether the employer is liable should be submitted to the jury.

73 Fla. at 439-40; *see Wolfe v. City of Miami*, 103 Fla. 774 (1931); *W. Union Tel. Co. v. Michel*, 120 Fla. 511, 518-19 (1935).  Hence, although modern tort cases often cite workers' compensation cases for the "traveling employee" rule and the "distinct departure" exception, both the rule and the exception arose independently for a tort caused by an employee's negligent driving on the employer's behalf.

- 3 -

An employee who negligently injures a bystander while traveling for the employer acts within the scope of employment, unless the injury occurred during a distinct departure or a routine commute. *See Howland v. Hertz Corp.*, 431 F.Supp.2d 1238, 1241-42 (M.D. Fla. 2006) (Bucklew, J.); *St. Paul Guardian Ins. Co. v. United States*, 117 F.Supp.2d 1349, 1354-55 (S.D. Fla. 2000) (Moore, J.); *Liberty Mut. Ins. v. Elec. Sys., Inc.*, 813 F.Supp. 802, 806-10 (S.D. Fla. 1993) (Paine, J.); *Ashworth v. United States*, 772 F.Supp. 1268, 1271-73 (S.D. Fla. 1991) (King, J.); *Eberhardy v. Gen. Motors Corp.*, 404 F.Supp. 826, 830 (M.D. Fla. 1975) (Scott, J.); *Hertz Corp. v. Ralph M. Parsons Co.*, 292 F.Supp. 108, 110-11 (M.D. Fla. 1968) (Young, J.), *rev'd on other grounds*, 419 F.2d 783 (5th Cir. 1969); *Ford v. Fla. Dept. of Transp.*, 855 So.2d 264 (Fla. 4th DCA 2003); *Carroll Air Sys., Inc. v. Greenbaum*, 629 So.2d 914, 915-17 (Fla. 4th DCA 1993); *Thurston v. Morrison*, 141 So.2d 291 (Fla. 2d DCA 1962). An employee travels for the employer if the travel is "of the kind [the employee] is employed to perform," the travel is performed "substantially within the authorized time and space limits" of the employment, and the travel "is actuated, at least in part, by a purpose to serve the [employer]." *Restatement (Second) of Agency* § 228 (1958); *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009); *St. Paul Guardian*, 117 F.Supp.2d at 1354; *Powers v. E.R. Precision Optical Corp.*, 886 So.2d 281, 285 (Fla. 1st DCA 2004); *Rabideau v. State*, 391 So.2d 283, 284 (Fla. 1st DCA 1980), *aff'd*, 409 So.2d 1045 (Fla. 1982); *Whetzel v. Metro. Life Ins. Co.*, 266 So.2d 89, 91 (Fla. 4th DCA

1972); 2A Fla. Jur. 2d *Agency and Employment* § 265 (2011). If while traveling for the employer the employee departs on a "purely private deviation," "the scope of employment is suspended until the employee returns to the point of departure." *Eberhardy*, 404 F.Supp. at 830; *Ford*, 855 So.2d 264; *N. & L. Auto Parts Co. v. Doman*, 111 So.2d 270, 272 (Fla. 1st DCA 1959).

Benway traveled to Florida to conduct an investigation and a witness interview, both of which benefitted the FTC. Between the investigation and the interview Benway needed accommodation, and the trip therefore demanded a drive toward a place to stay no less than the trip demanded lawyering. Because investigating and interviewing abroad entailed traveling while abroad to investigate and interview, the accident occurred as Benway performed a part of her job. The FTC approved Benway's renting a car and Benway's choosing to stay with her mother. No one contends that the FTC delimited specific hours for Benway's drive, which she started immediately after finishing her business in Orlando. Benway surely preferred visiting her mother to visiting a hotel, but the destination saved the FTC money and effort. In short, the drive that led to the accident was of a type, at a time, and for a purpose within the scope of Benway's employment. Cases that informatively resemble this one include *Hinson v. United States*, 275 F.2d 178, 181-83 (5th Cir. 1958) (Georgia law); *Ashworth*, 772 F.Supp. 1268, 1271-73 (Florida law); *Fitzpatrick v. United States*, 726 F.Supp. 975, 979-81 (D. Del. 1989) (applying the same

*Restatement* rule as Florida); *Marquardt v. United States*, 115 F.Supp. 160 (S.D. Cal. 1953) (Arizona law); and especially *Prince v. Creel*, 358 F.Supp. 234 (E.D. Tenn. 1972) (Tennessee law).

Benway denies consuming alcohol before the accident; she submits that none of the three police officers who interviewed her after the accident reported her as under the influence of alcohol. Regardless, even if true, Elizabeth Williams's claim that she smelled alcohol on Benway's breath changes nothing. As shown by a boatswain with the "tangled" mind of a "roaring drunk" who punched a sleeping crewman, *Nelson v. American-West African Line*, 86 F.2d 730 (2d Cir. 1936) (Hand, J.), and by a seaman "in the condition for which seamen are famed" who opened the flood-valve of a drydock, *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167 (2d Cir. 1968) (Friendly, J.), alcohol rarely shrinks vicarious liability. *See also Fitzpatrick*, 726 F.Supp. at 979-81; *Creel*, 358 F.Supp. 234. Typically, even an employee who disobeys the employer's direct order to work sober still acts within the scope of employment. *See Jacobi v. Claude Nolan, Inc.*, 122 So.2d 783, 788-89 (Fla. 1st DCA 1960) (quoting *Stinson v. Prevatt*, 84 Fla. 416, 418-19 (1922)). Benway declares that she crashed while heading toward her mother's house, and the Williamses offer only conclusory (and inflammatory) speculation to the contrary. (Doc. 26 at 3) If she departed "on a frolic of her own" for alcohol, Benway resumed her employment before the accident.

The United States is the proper defendant. Before suing the United States under the FTCA, the Williamses needed to submit an administrative claim demanding a sum certain to the FTC; otherwise the Williamses fail to invoke federal jurisdiction. *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008); *Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir. 2006); *Burchfield v. United States*, 168 F.3d 1252, 1254-55 (11th Cir. 1999); *see also Mader v. United States*, 654 F.3d 794, 805-08 (8th Cir. 2011) (*en banc*). By their own admission, the Williamses never submitted an administrative claim to the FTC. (Doc. 27 at 6) To excuse their failure, the Williamses suggest that during a settlement negotiation Benway or Benway's insurer bore a responsibility to inform the Williamses of Benway's federal employment. They did not. *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (discussing – in a case involving the FTCA's statute of limitation – a plaintiff's affirmative duty to investigate whether the tortfeasor is a federal employee) (citing the First, Fourth, and Eighth Circuits); *Emps. Welfare Comm. v. Daws*, 599 F.2d 1375, 1378 n.6 (5th Cir. 1979); 14 Wright & Miller, *Federal Practice & Procedure* § 3658 (2011) ("if the administrative claim has not been filed in timely fashion by the claimant, perhaps in the erroneous belief that the plaintiff could sue only the government employee, the action will be dismissed as premature"). In any event, estoppel or another equitable principle cannot excuse the Williamses' failing to

fulfill a jurisdictional requirement.  *Cooley v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 895 F.2d 1301, 1303 (11th Cir. 1990).

The motion (Docs. 23, 24) for reconsideration is **DENIED**.  This action is **DISMISSED** for failure to invoke the subject matter jurisdiction of the district court.  The clerk is directed to terminate any pending motion and close the case.

ORDERED in Tampa, Florida, on January 30, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE